# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOHNELL MATTHEWS (#119115)**                           **CIVIL ACTION**

**VERSUS**                                                              **NO. 18-589-BAJ-EWD**

**STATE OF LOUISIANA**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 18, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOHNELL MATTHEWS (#119115)**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 18-589-BAJ-EWD**

**STATE OF LOUISIANA**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("federal habeas application"),[1] filed by Johnell Matthews ("Petitioner"). Because Petitioner's claim is untimely, the undersigned recommends denial. There is no need for oral arguments or for an evidentiary hearing.

### I.    Procedural History

On September 18, 2008, Petitioner was charged via a grand jury indictment in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana with second degree murder in violation of La. R.S. 14:30.1.[2] On January 5, 2010, Petitioner entered a plea of guilty to the responsive charge of manslaughter and was contemporaneously sentenced to forty (40) years imprisonment to be served without the benefit of probation, parole, or suspension of sentence.[3] Petitioner did not appeal.

---

[1] R. Doc. 1.
[2] R. Doc. 14, p. 1.
[3] R. Doc. 14, p. 4.

On May 5, 2015,[4] over five years after Petitioner's sentencing, he filed an application for post-conviction relief in the trial court ("PCR application"),[5] requesting to withdraw from the plea agreement because he had not given a knowing and intelligent plea of guilty.[6]  The trial court denied the Petitioner's application for post-conviction relief on June 28, 2016.[7]  On July 7, 2016, Petitioner filed notice of intent to file a supervisory writ with the Louisiana Court of Appeal for the First Circuit ("First Circuit").[8]  On October 7, 2016, the First Circuit denied the Petitioner's writ on the showing made because he failed to include documents necessary for consideration and gave Petitioner until December 12, 2016 to file a new application.[9]  Petitioner refiled his writ application on November 21, 2016,[10] which the First Circuit again denied on the showing made on February 6, 2017.[11]  On February 23, 2017, Petitioner sought review with the Louisiana Supreme Court,[12] which denied his writ *per curiam* on April 20, 2018 because the application was untimely and Petitioner failed to establish that any exception applied.[13]  On May 23, 2018,[14] Petitioner filed his federal habeas application.

---

[4] R. Doc. 14, pp. 216-228.  An inmate's pleadings are considered to be filed on the date that they are presented to prison officials or placed into the prison mailing system for transmission to the Court, not on the date that they are ultimately received or docketed. *See Cooper v. Brookshire*, 70 F.3d 377, 379-80 (5th Cir. 1995). Courts generally presume that the date an inmate signed and dated his filing is the date he gave it to prison officials for mailing. *See Toomer v. Cain*, 09-7446, 2010 WL 4723365, at n. 3 (E.D. La. July 30, 2010). Absent evidence to the contrary, this Report will use the date the document was signed as its filing date.

[5] R. Doc. 14, p. 57.

[6] R. Doc. 1, pp. 14 and 54.  Specifically, Petitioner stated: "I was under the belief that I was going to serve 85% of the 40 year sentence.  I believed that I was under Act 1099, until I received a Master Prison Record stating that I was under Act 110 and was ordered to serve the full 40 years."  R. Doc. 14, p. 54.

[7] R. Doc. 14, p. 305

[8] R. Doc. 14, p. 59.

[9] R. Doc. 14, p. 72.

[10] R. Doc. 14, p. 75.

[11] R. Doc. 14, p. 89.

[12] R. Doc. 13-1, p. 2.

[13] R. Doc. 14, p. 92.

[14] R. Doc. 1, p. 7.

## II.    Petitioner's Claims are Untimely Under 28 U.S.C. § 2244(d)(1)(A) or 2244(d)(1)(D)

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody:

> The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[15]

The applicable portions of this statute for purposes of this matter are (A) and (D), as Petitioner has not argued, nor does the record establish, facts to support the application of subsections (B) or (C). With respect to 28 U.S.C. § 2244(d)(1)(A), if a petitioner stops the direct appeal process before proceeding through all available state courts, "the conviction becomes final when the time for seeking further direct review in the state court expires."[16]  After his plea and sentence on January 5, 2010,[17] Petitioner did not seek a direct appeal or reconsideration of his sentence.  By operation of law, his conviction became final on February 5, 2010,[18] his one-year time period for seeking federal habeas relief began to run, and he had until February 7, 2011 to file a federal habeas

---

[15] 28 U.S.C. § 2244(d)(1).
[16] *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).
[17] R. Doc. 14, p. 4.
[18] Louisiana Code of Criminal Procedure article 914 provides, in pertinent part, that a motion for an appeal must be made no later than thirty days after the rendition of the judgment or ruling from which the appeal is taken.

application.[19]  Because Petitioner did not have any appeals or applications for state post-conviction relief or other collateral review pending between February 5, 2010 and February 7, 2011, which would have tolled the limitations period,[20] his federal habeas application is untimely under 28 U.S.C. § 2244(d)(1)(A).

It appears Petitioner may be under the impression that his claims are timely under 28 U.S.C. § 2244(d)(1)(D).  In his federal habeas application, Petitioner says he did not know he was ineligible for parole until he received a master prison record indicating his ineligibility.[21]  In connection with his PCR application, Petitioner also says he was unaware he was ineligible for parole until April 2015.[22]  Petitioner alleges that, based upon the prosecutor's incorrect statement at his *Boykin* hearing,[23] he believed when making his guilty plea that he would be eligible for parole after serving 85% of his sentence; however, he is not eligible for parole and must serve the full term of his sentence.[24]  The relevant question under § 2244(d)(1)(D) is the earliest date on which Petitioner could have discovered through the exercise of due diligence that he was ineligible for parole, considering the incorrect statements made by the prosecutor at the *Boykin* hearing.

Petitioner has the burden to establish that his federal habeas application is timely.[25]  As Petitioner's conviction was final in February 2010, the application is prescribed on its face. Under

---

[19] The one-year period actually expired on February 6, 2011, but since that day was a Sunday, Petitioner would have had until February 7, 2011 to file.

[20] 28 U.S.C. § 2244(d)(2).

[21] R. Doc. 1, p. 14.

[22] R. Doc. 14, pp. 224, 246.

[23] R. Doc. 14, pp. 26-27, 34 (the prosecutor stated on the record, "he'll do forty years, less eighty-five percent, which would be -- he'll do thirty-four if he has good behavior."  The prosecutor also noted that Petitioner qualified under the geriatric parole statute to become parole eligible after twenty years.

[24] R. Docs. 1, p. 14; 14, p 54.  Further, though it may appear Petitioner is making an *ex post facto* challenge due to his language choice, *e.g.*, "State materially breached the terms and conditions of the Plea Agreement by the implementation of Act 150," there is no viable *ex post facto* challenge as "Act 150," to which Petitioner refers, was enacted in 1994, over a decade prior to Petitioner's crime and sentencing.  "Act 150" amended La. R.S. 15:571.3.

[25] *Davis v. Cain*, No. 12-2713-P, 2016 WL 1223340, at *1 (W.D. La. Mar. 22, 2016) (it is the petitioner's burden to justify the application of 28 U.S.C. § 2244(d)(1)(D) to make his application timely); *Andika v. Thaler*, No. 10-2428, 2011 WL 589826, at *2 (N.D. Tex. Jan. 24, 2011), *report and recommendation adopted*, No. 10-2428, 2011 WL 588741 (N.D. Tex. Feb. 8, 2011) ("the petitioner bears the burden of establishing the applicability of section

§ 2244(d)(1)(D), the federal limitations period begins to run when the factual predicate of the claims could have been discovered using due diligence, not when it was actually discovered.[26] The "test of due diligence under section 2244(d)(1)(D) is objective, not subjective."[27]  Petitioner must show why he was unable to discover the factual predicate at an earlier date.[28] Merely alleging that he did not know the facts underlying his claim(s) is insufficient.[29]  Several courts have equated the exercise of due diligence to a rule of "inquiry notice."[30]  In other words, when should a petitioner "have learned of the new evidence" had he "exercised reasonable care."[31]  The due diligence standard "requires the petitioner to exercise the consideration expected of a reasonably prudent person under similar circumstances."[32]

Though the prosecutor misstated Petitioner's eligibility for parole at the *Boykin* hearing, Petitioner's "original master prison record," dated February 4, 2010, lists a parole eligibility date ("PED") of "NOTELG."[33]  While this record also contains some conflicting information indicating

---

2244(d)(1)(D), including his due diligence."); *Koon v. Cain*, No. 13-2538, 2014 WL 120894, at *5 (W.D. La. Jan. 13, 2014) ("limitations is not reckoned from the date petitioner discovered the factual predicate of his claim, but rather from the date it 'could have been discovered through the exercise of due diligence'…and petitioner bears the burden of establishing that date.") (emphasis in original); *Webster v. Travis*, No. 07-4236, 2009 WL 3052674, at *1 (E.D. La. Sept. 17, 2009) ("The burden falls on the petitioner to persuade the court that he acted with due diligence and could not have discovered the evidence to file a timely petition.").

[26] *Boone v. Davis*, No. 18-009, 2019 WL 10599642, at *3 (N.D. Tex. Jan 28, 2019), citing *Manning v. Epps*, 688 F.3d 177, 189 (5th Cir. 2012).

[27] *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008) (internal quotation marks omitted), quoting *Wood v. Spencer*, 487 F.3d 1, 5 (1st Cir. 2007).

[28] *Boone*, 2019 WL 10599642, at *3.

[29] *Id.*

[30] *Clarke v. United States*, 703 F.3d 1098, 1100–01 (7th Cir. 2013) ("The dependence of the statute of limitations on the petitioner's exercise of due diligence is equivalent to a rule of 'inquiry notice.'"); *Ford v. Gonzalez,* 683 F.3d 1230, 1236 (9th Cir. 2012); *Cole v. Warden, Georgia State Prison*, 768 F.3d 1150, 1157 (11th Cir. 2014) ("§ 2254 habeas petition is barred by inquiry notice evidencing lack of due diligence under § 2244(d)(1)(D) and AEDPA's one-year statute of limitations…."). *See also Gonzales v. Martin,* No. 18-297, 2018 WL 4494993, at *2 (W.D. Okla. Sept. 19, 2018) ("Because due diligence is equivalent to a rule of inquiry notice, the prisoner is obligated to make reasonable efforts to discover the facts relevant to his claims for habeas corpus relief.") (internal quotations and citations omitted).

[31] *Townsend v. Lafler*, 99 Fed. Appx. 606, 608 (6th Cir. 2004); *Bunch v. Dretke*, No. 05-113, 2005 WL 3742793, at *2 (N.D. Tex. Nov. 4, 2005) (the limitations period of § 2244(d)(1)(D) runs from "the date on which the petitioner discovers the factual predicate of the claim or claims presented, or by the exercise of due diligence *should have* discovered them.") (emphasis added).

[32] *Webster*, 2009 WL 3052674, at *1, citing *Frazier v. Rogerson*, 248 F.Supp.2d 825, 833 (N.D. Iowa 2003).

[33] R. Doc. 14, p. 87.

Petitioner was included under good time act 1099 and that his sentence may be adjusted to June 15, 2042, rather than the full term date of June 15, 2048,[34] information indicating that Petitioner was not eligible for parole was sufficient to alert a reasonable person to inquire further.[35] A reasonable person exercising due diligence would have inquired further regarding why the record reflected Petitioner was not eligible for parole.[36]  Petitioner has not established that he asked questions to get an explanation at that point.

Additionally, the factual determinations made by the Commissioner regarding this issue are presumed to be correct and Petitioner has the burden of rebutting that presumption by clear and convincing evidence.[37]  Here, the Commissioner made the following factual determinations:

> Petitioner's record clearly shows that Petitioner received his Master Prison Record on **May 19, 2010**. This Commissioner takes judicial notice that Petitioner was aware that he was ineligible for good time shortly after that date. This Commissioner takes Judicial Notice that on June 18, 2010, Petitioner sent a letter to the prison authorities questioning why he was under ACT 150 rather than ACT 1099. The prison authorities responded to Petitioner on **September 11, 2010**, explaining in detail why his earlier conviction precluded him from taking advantage of the 85% "good time" benefit. This instant application was not filed until **May 5, 2015**, nearly five years after Petitioner discovered that he was ineligible for the 85% "good time"

---

[34] R. Doc. 14, p. 87.

[35] Any claim that Petitioner did not know what the abbreviations "PED" or "NOTELG" meant lacks merit. *See Pickens v. Cooper*, No. 10-1449, 2011 WL 2935400, at *4-5 (W.D. La. June 27, 2011) (declining to find habeas petition timely under § 2244(d)(1)(D) as the petitioner was given a copy of his master prison record that contained the purported "new" information and could have determined what the abbreviations in the master prison record meant if he had exercised diligence).  The fact that the record indicated Petitioner was not eligible parole should have been enough information for a reasonable person to seek clarification regarding the ineligibility for parole indicated on the original master prison record.

[36] *See, e.g.*, *Fox v. Smith*, No. 14-53, 2015 WL 179763, at *5 (N.D. Miss. Jan. 14, 2015) (petitioner should have known, through the exercise of due diligence, that he needed to proceed *with haste* to the state courts to exhaust his claims, despite the federal court's typographical error stating he "should, *without haste*, return to the state court."); *Pickens*, 2011 WL 2935400, at *4-5 (if petitioner would have exercised due diligence in discovering the meaning of the abbreviations in his master prison record, he would have known the date he would become parole eligible, so the date of discovery for purposes of 28 U.S.C. § 2244(d)(1)(D) must be the date he received the master prison record); *Osborne v. Fisher*, No. 13-784, 2017 WL 9512368, at *15 (S.D. Miss. Feb. 21, 2017), *report and recommendation adopted*, No. 13-784, 2017 WL 1166553 (S.D. Miss. Mar. 28, 2017), *aff'd sub nom. Osborne v. Hall*, 934 F.3d 428 (5th Cir. 2019) (petitioner had not exercised due diligence by waiting until after a deposition to file his petition because, though he did not have all information relevant to his claims prior to the deposition, he had enough information to alert him to a potential habeas claim).

[37] 28 U.S.C. § 2254(e).

> benefit. In *State v. Orman*, (2nd Cir. 3/16/06), 925 So.2d 761, the
> appellate court held that a defendant is not entitled to post-
> conviction review of facts discovered more than two years prior to
> filing his untimely application. Simply put, Petitioner received a
> copy of his Master Prison Report on May 19, 2010, and thus should
> have requested relief by May 18, 2012. Even assuming that
> Petitioner was waiting for clarification from the prison authorities
> before filing his application, he received that explanation on
> September 11, 2010.[38]

The Commissioner's Recommendation was adopted by the state trial court.[39] Petitioner's writ was

denied at the First Circuit,[40] and at the Louisiana Supreme Court, with the Supreme Court

specifically noting that Petitioner's PCR application was untimely.[41]

Petitioner has not come forward with any evidence to challenge the correctness of the

Commissioner's findings.[42] At most, he says in passing that he does not recall receiving the master

prison record in May 2010 or the September 2010 letter. He seems to suggest this may have been

because "Offender Counsel was looking into his case around that time."[43] Petitioner's statement

-- that he does not recall receiving the documents that the Commissioner determined he did receive

-- is insufficient to meet his burden. Additionally, there is no reason to believe (and Petitioner has

not provided one), that any master prison record would not have gone to Petitioner first. Whether

he then gave it to "offender counsel" and whether "offender counsel" correctly interpreted it is

irrelevant.[44]

---

[38] R. Doc. 14, p. 293 (emphasis in original).

[39] R. Doc. 14, p. 305.

[40] R. Doc. 14, p. 89.

[41] R. Doc. 14, p. 92-93.

[42] Despite the First Circuit advising Petitioner that he had not submitted evidence to support his substantive claims, including the master prison record he alleges put him on notice of these claims in April 2015, and giving Petitioner the opportunity to submit such evidence with a new writ application (R. Doc. 14, p. 85), the record does not reflect that Petitioner submitted this evidence (although he did file a new writ application).

[43] R. Doc. 14, p. 246.

[44] The timeline established by the Commissioner makes sense when reviewing the record. The original master prison record, dated February 4, 2010, indicates that Petitioner is not eligible for parole but has other information in it to suggest he may have been eligible under Act 1099. R. Doc. 14, p. 87. Then Petitioner receives an updated master prison record in May 2010, which made him aware he was ineligible for parole because he was under Act 150, rather than Act 1099. He inquired about that in June 2010 and received a response explaining the determination in September

As Petitioner's application is untimely, this Court must dismiss the application pursuant to 28 U.S.C. § 2244(d) unless Petitioner can establish that he is entitled statutory tolling of the limitations period under § 2244(d)(1)(B), because there was a state-created impediment to timely filing, or that he is entitled to equitable tolling.  The same facts that support a finding that Petitioner's application is untimely, show that he is not entitled to tolling.  Petitioner has not shown that he was prevented in any extraordinary way from filing his federal application in a timely fashion.[45]

### III.    A Certificate of Appealability Should be Denied

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[46] Although Petitioner has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[47] A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[48]  In cases where the court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional rights *and* that jurists of reason would find it debatable whether the district court

---

2010.  The record reflects that in September 2010, Petitioner requested his *Boykin* hearing transcript and the extract of minutes from his sentencing.  In his motion, Petitioner references that he is seeking the information because he "intends to allege that his judgment of conviction is based on a unconstitutionally invalid plea of guilty."  R. Doc. 14, p. 9.  The motion was granted by the trial court on September 30, 2010.  R. Doc. 14, p. 6.  This supports the Commissioner's timeline that Petitioner was on notice of his claims well before he finally filed his PCR application in 2015.  While he may not have known everything about his claim, as in *Osborne*, *supra* n. 36, he had enough information to alert him to a potential claim.

[45] *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *abrogated on other grounds by Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013) (The doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.").

[46] 28 U.S.C. § 2253(c)(1)(A).

[47] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

[48] 28 U.S.C. § 2253(c)(2).

was correct in its procedural ruling."[49]  In the instant case, reasonable jurists would not debate the correctness of the procedural ruling that Petitioner's application is untimely. Accordingly, in the event Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief[50] be **DENIED** as untimely**,** and that this proceeding be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED** if Petitioner seeks to pursue an appeal.

Signed in Baton Rouge, Louisiana, on August 18, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[49] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006), citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis in original).
[50] R. Doc. 1